Anthony ATKINSON (96–A–4870), Petitioner,

v.

Leonard PORTUONDO, Superintendent of Shawagunk Correctional Facility, Respondent.

Nos. 00–CV–3573 (JBW), 03–MISC–0066 (JBW).

United States District Court, E.D. New York.

June 13, 2003.

58

Anthony Atkinson, Shawangunk C.F., Wallkill, NY, Pro se.

Marion M. Tang, District Attorney of Suffolk County, Riverhead, NY, for Respondent.

## JUDGMENT & ORDER

WEINSTEIN, Senior District Judge.

The petition for a writ of habeas corpus is denied. No hearing on this matter is necessary. This memorandum briefly addresses petitioner's claims.

### I. Facts and Procedural History

Petitioner was put on trial for charges relating to the rape of his niece, a seven-year-old girl for whom he had been baby-sitting. The victim testified at trial that petitioner had raped her in her bedroom. When her mother came home, the victim complained to her mother that she had to urinate but that it was too painful to do so. She then told her mother that she had been raped by petitioner.

The victim was brought to the hospital, where a rape kit was administered. The victim's clothing, including a bodysuit and the pair of women's panties she was wearing, were collected by the nurse. The victim was examined for signs of rape that day and the next. Doctors testified at trial that the indications of trauma, including redness and significant bleeding in the victim's vaginal area, were consistent with penile penetration of the seven year old girl. The trauma was visible with the aid of a colposcope. There was also evidence at trial that several days after the rape the victim was treated for a urinary tract infection, which the victim's examining doctor stated was consistent with findings of trauma to the vaginal area.

A forensic scientist also testified that he tested blood samples from petitioner and the victim, as well as samples taken from the victim's bodysuit and panties. Analysis revealed the presence of seminal fluid in the crotch area of the victim's panties. Only two DNA profiles were present in the stain taken from the panties. The forensic scientist testified that the profiles matched the victim's and petitioner's. He testified that the likelihood of a randomly selected individual having the same DNA profile as petitioner was approximately 1 in 13,700,-000,000 of the Caucasian and African-American populations, and 1 in 1,630,000,-000 of the Hispanic population of the United States.

The defense presented no case, but on cross-examination of state witnesses suggested that the victim may herself have caused trauma to her vaginal area with a hairbrush, and that the victim's testimony was a result of her mother's suggestion—as evidenced by the fact that she had once brought her daughter to the hospital suspecting she may have been sexually abused by someone unrelated to the instant case.

Petitioner, who had waived a jury trial, was found guilty by the trial court of two counts of first degree rape and endangering the welfare of a child. He was sentenced to 23 years in prison.

Petitioner's convictions and sentence were affirmed on appeal. Leave to appeal to the New York Court of Appeals was denied. Petitioner brought four motions to vacate judgment before the trial court. All were denied, and leave to appeal was denied by the Appellate Division.

In the present application for a writ of habeas corpus, petitioner claims (1) that his conviction was obtained by the unconstitutional failure of the prosecution to disclose evidence favorable to him; and (2) that he was "unlawfully seized in his home with an invalid search warrant to search one bedroom." Both claims have been exhausted and neither was procedurally defaulted in state court.

## II. AEDPA

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

An "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." *Sellan v. Kuhlman,* 261 F.3d 303, 313 (2d Cir.2001) (quoting *Aycox v. Lytle,* 196 F.3d 1174, 1178 (10th Cir.1999)). Under the "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (O'Connor, J., concurring and writing for the majority in this part). Under the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S.Ct. 1495. "[F]ederal law, as determined by the Supreme Court, may as much be a generalized standard that must be followed, as a bright-line rule designed to effectuate such a standard in a particular context." *Overton v. Newton,* 295 F.3d 270, 278 (2d Cir.2002). Determination of factual issues made by a state court "shall be presumed to be correct," and the applicant "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## III. Exhaustion

■ In the past, a state prisoner's federal habeas petition had to be dismissed if the prisoner did not exhaust available state remedies as to any of his federal claims. *See Rose v. Lundy,* 455 U.S. 509, 522, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). "This exhaustion requirement is ... grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." *Coleman v. Thompson,* 501 U.S. 722, 731, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The exhaustion requirement requires the petitioner to have presented to the state court "both the factual and legal premises of the claim he asserts in federal court." *Daye v. Attorney General,* 696 F.2d 186, 191 (2d Cir.1982) (en banc).

Pursuant to AEDPA, a district court may now, in its discretion, *deny* on the merits habeas petitions containing unexhausted claims—so-called "mixed petitions." *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state."). In addition, the state may waive the exhaustion requirement, but a "State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement." *Id.* § 2254(b)(3); *see also Ramos v. Keane,* No. 98 CIV. 1604, 2000 WL 12142, at *3 (S.D.N.Y.2000)

(state's failure to raise exhaustion requirement does not waive the issue).

■ A claim may be presented for habeas review even if the federal grounds were not explicitly asserted before the state courts if the petitioner, in asserting his claim before the state court, relied on pertinent federal cases employing constitutional analysis, relied on state cases employing constitutional analysis in like fact situations, asserted his claims in terms so particular as to call to mind specific rights protected by the constitution, or alleged a pattern of facts well within mainstream of constitutional litigation. *See Daye v. Attorney General*, 696 F.2d 186 (1982).

## IV. Procedural Bar

■ A federal habeas court may not review a state prisoner's federal claims if those claims were defaulted in state court pursuant to an independent and adequate state procedural rule, "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750, 111 S.Ct. 2546.

■ If a state court holding contains a plain statement that a claim is procedurally barred then the federal habeas court may not review it, even if the state court also rejected the claim on the merits in the alternative. *See Harris v. Reed*, 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) ("a state court need not fear reaching the merits of a federal claim in an *alternative* holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision).

■ When a state court "uses language such as 'the defendant's remaining contentions are either unpreserved for appellate review or without merit,' the validity of the claim is preserved and is subject to federal review." *Fama v. Comm'r of Corr. Services*, 235 F.3d 804, 810 (2d Cir. 2000). When a state court "says that a claim is 'not preserved for appellate review' and then ruled 'in any event' on the merits, such a claim is not preserved." *Glenn v. Bartlett*, 98 F.3d 721, 724–25 (2d Cir.1996).

## V. Certificate of Appealability

This opinion complies with *Miranda v. Bennett*, 322 F.3d 171, 175–77 (2d Cir. 2003), and Rule 52 of the Federal Rules of Civil Procedure. No other issue open to consideration by this court has merit. *See Sumner v. Mata*, 449 U.S. 539, 548, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981) ("a court need not elaborate or give reasons for rejecting claims which it regards as frivolous or totally without merit").

A certificate of appealability may be granted with respect to any one of petitioner's claims only if petitioner can make a substantial showing of the denial of a constitutional right. Petitioner has a right to seek a certificate of appealability from the Court of Appeals for the Second Circuit. *See* 28 U.S.C. § 2253; *Miller–El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

## VI. Instant Claims

Petitioner first claims that his conviction was obtained by the unconstitutional failure of the prosecution to disclose evidence favorable to him. He claims the prosecution never revealed to him a "narrative report" or "Hotline Report" from the New York Department of Social Services revealing that the victim had a urinary tract infection on the day she was brought to the hospital after she complained she had been raped. Petitioner suggests that this report was exculpatory because it shows

that the victim was suffering from urinary tract infection rather than from trauma resulting from sexual abuse.

■ The prosecution in a criminal matter has a constitutional obligation to disclose exculpatory evidence to the defendant. *See Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). "A finding of materiality of the evidence is required under *Brady.*" *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Exculpatory evidence is considered material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler v. Greene*, 527 U.S. 263, 280, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) (quoting *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)). Nondisclosure merits relief only if the prosecution's failure " 'undermines confidence in the outcome of the trial.' " *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (quoting *Bagley*, 473 U.S. at 678, 105 S.Ct. 3375).

■ Petitioner's claim is without merit. First, the prosecution supplied petitioner with numerous documents concerning the victim's urinary tract infection as *Rosario* material. *See* Exhibits to People's Aff. in Opposition to Second, Third and Fourth Motions to Vacate Judgment. Petitioner identifies no documents in the prosecution's control with respect to the urinary tract infection that the prosecution failed to reveal to him. The narrative report to which he refers in his petition was drafted about a year after he was convicted, on request from petitioner.

Second, contrary to petitioner's suggestion, the report does not demonstrate that the victim had a preexisting urinary tract infection. To the contrary, the report is consistent with testimony from the victim's examining doctor at trial that the urinary tract infection was caused by the sexual trauma the child suffered. The report is inculpatory.

Third, the trial court reviewed and rejected this claim when it was raised in a motion to vacate judgment (in which petitioner stated more specifically which particular documents concerning the infection were withheld from him) on the ground that the evidence was immaterial:

> The People's evidence at trial centered on the testimony of [the victim]. The defendant now contends that he has learned that the complainant was diagnosed with a urinary tract infection after her initial disclosure that she had been raped. The defendant contends that such information was not disclosed to him and that this constitutes a *Brady* violation. The People contend that the information was provided to the defendant and the court record bears this out, with the sole exception of a Hotline Report which the People aver was not [in] their possession.

> Fundamentally, whether the complainant had a urinary tract infection or not was immaterial to this Court's determination of the defendant's guilt. This case stood firmly upon the testimony of [the victim] together with other corroborating evidence. [The victim's] subjective complaint of painful urination did not in anyway implicate the defendant or support the defendant's conviction. As such the purported urinary tract infection was irrelevant and not *Brady* material whether disclosed or not.

April 5, 2000 Decision at 1. Petitioner has not established that there was any *Brady* violation. No habeas relief is merited with respect to this claim.

Petitioner also claims that he was "unlawfully seized in his home with an invalid search warrant to search one bedroom." Under *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), a federal habeas court is barred from reviewing the merits of a Fourth Amendment claim so long as the state has provided petitioner with the opportunity for a full and fair litigation of his claim. Petitioner never sought to raise this claim until his first post-conviction motion to vacate judgment. The trial court denied that application because petitioner's motion papers were "fatally defective because they are effectively unsworn and constitute a legal nullity."

Petitioner was nonetheless granted leave by the Appellate Division to appeal the trial court's procedural denial of the motion and to have the appeal of that motion decided as part of his direct appeal. He chose not to raise this issue directly. He did include it as part of a claim that he received ineffective assistance of trial counsel. That claim was denied. Petitioner was not deprived of a full and fair opportunity to litigate the claim. Further review in this court is therefore barred under the *Stone* doctrine.

This seizure and search did not bear on proof of guilt. It had no bearing on the conviction. The claim is meritless.

VII.  Conclusion

The petition for a writ of habeas corpus is denied.

No certificate of appealability is granted with respect to any of petitioner's claims, petitioner having made no substantial showing of the denial of a constitutional right. Petitioner has a right to seek a certificate of appealability from the Court of Appeals for the Second Circuit. *See* 28 U.S.C. § 2253; *Miller–El v. Cockrell,* 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

SO ORDERED.